

FILED
September 19, 2016
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD
Time: 7:51 A.M.

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Sarah Love | ) | Docket No. 2015-07-0195 |
| | ) | |
| v. | ) | State File No. 55816-2015 |
| | ) | |
| Delta Faucet Company, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

---

### Affirmed and Remanded—Filed September 19, 2016

---

In this interlocutory appeal, the employer challenges the trial court's award of medical and temporary disability benefits with respect to the employee's right shoulder injury, which she alleges occurred when she lifted a tray of parts while working on the employer's assembly line. The employer, after initially accepting the claim, denied further benefits, asserting the employee had prior problems with her shoulder and that her current complaints were not related to her employment. Following an expedited hearing, the trial court found the employee presented sufficient proof to establish she would likely prevail at a hearing on the merits and awarded medical and temporary disability benefits. The employer has appealed. We affirm the trial court's decision and remand the case.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Art Crews, Jackson, Tennessee, for the employer-appellant, Delta Faucet Company

James Krenis, Jackson, Tennessee, for the employee-appellee, Sarah Love

### Factual and Procedural Background

Sarah Love ("Employee"), a resident of Madison County, Tennessee, alleged suffering an injury to her right shoulder while working for Delta Faucet Company ("Employer") on July 17, 2015. She described lifting a tray of parts while in the course of her duties and feeling a "pop" in her shoulder accompanied by immediate pain. She

1

reported the injury immediately, completed an incident report, and was provided a panel of physicians from which she selected Dr. Gregory Wolf, an orthopedic surgeon. When Employee saw Dr. Wolf, she complained of pain in her right shoulder since lifting the tray of parts on July 17, 2015 and, after ordering an MRI, Dr. Wolf diagnosed a biceps tendon rupture and rotator cuff tear and recommended surgery.

Employer sent Dr. Wolf a letter dated August 6, 2015, requesting his opinion with respect to causation. He replied on September 25, 2015, after seeing Employee and reviewing the MRI results, that Employee's complaints arose "100%" out of her employment. Employer sent Dr. Wolf another letter dated October 5, 2015, providing a detailed recitation of Employee's medical history related to her right shoulder beginning in the 1990's. The letter asserted that Employee had provided an inaccurate history to Dr. Wolf and asked him to "re-visit" his prior opinion. Dr. Wolf responded on November 5, 2015, by checking a box indicating he could not say within a reasonable degree of medical certainty that Employee's complaints were primarily related to her employment. Upon receipt of this opinion, Employer denied the claim.

On January 12, 2016, Dr. Wolf reiterated his recommendation for surgery and noted that Employee's shoulder problem appeared to be a "clear cut" case of a work-related injury. In response to another inquiry from Employer, however, Dr. Wolf added a note to his file dated March 25, 2016, indicating that he could not say within a reasonable degree of medical certainty that Employee's problems were primarily related to the work incident at issue.

Subsequently, on April 21, 2016, Dr. Wolf saw Employee, discussed her history of shoulder pain, and came to the conclusion that the injury was in fact causally related to her work accident. Employee denied suffering from significant pain in the past and reported to Dr. Wolf that she was doing well until she felt the pop in her shoulder at work. Dr. Wolf observed that most of Employee's right shoulder complaints prior to her date of injury were documented in the late 1990's, that there had never been any objective studies performed relative to Employee's prior complaints, and that she had been working without difficulty prior to the subject injury.

Employer obtained a records review from Dr. David Sickle, sending him a letter dated May 31, 2016, which again recited in detail Employee's medical history with respect to her shoulder complaints, attached the medical records Employer deemed relevant, and asserted that Dr. Wolf's reasoning in arriving at his conclusions was "frankly, flawed." In response, Dr. Sickle checked a box indicating that he could not say within a reasonable degree of medical certainty that Employee's complaints were causally related to her employment.

Employee, the only witness to testify at the expedited hearing, testified that she experienced a pop in her shoulder accompanied by pain lifting a tray of parts while

2

working on Employer's assembly line. She acknowledged having experienced pain in her right shoulder previously for which she sought medical care, but she denied having suffered a right shoulder injury prior to the incident giving rise to this claim. She also described seeking prior treatment for an area of her arm just above her elbow. On cross-examination, Employee acknowledged that medical records from her primary care physician reflected complaints of right shoulder pain, but she maintained that she was actually seeking treatment for right arm pain. She denied having suffered an injury to her right shoulder prior to the work injury at issue.

Employer also questioned Employee about an intake form she completed at Dr. Wolf's office and about the incident report she filled out for Employer on which she denied having been treated for "this condition" in the past. Employee testified that she was being truthful when she completed these forms, as she had never suffered an injury to her right shoulder or received medical care for right shoulder complaints prior to this injury. Despite prolonged questioning, she was steadfast in her assertion that she had been treated for right arm pain rather than right shoulder pain.

Following the expedited hearing, the trial court issued a detailed order awarding Employee medical and temporary disability benefits. The court explained the basis for its decision as follows:

> The Court finds Dr. Wolf's explanation convincing. Conspicuously absent from any of the prior medical records, from *any* time in the past, is a diagnosis of a rotator cuff tear or biceps tendon rupture, a record of an MRI demonstrating such conditions, or any indication of [Employee's primary care physician] restricting [Employee] from work. While [Employee] may have complained of shoulder pain in the more recent past than that described by Dr. Wolf, the uncontroverted proof is that [Employee] worked in production at [Employer] with "perfect attendance" for five years before her injury. She described her job as "fast" and "repetitive," with her handling 140 faucets per hour and being required to lift and load parts. The Court finds such consistent job performance is inconsistent with an individual with a serious issue in her shoulder. . . . Given the facts as presented, and regardless of [Employee's] less than ideal memory, the Court finds the evidence of prior shoulder issues does not in and of itself preponderate against a finding that [Employee] sustained an injury at [work].

With regard to the medical proof in particular, the trial court credited Dr. Wolf's opinion over Dr. Sickle's opinion, explaining:

> The Court rejects [Employer's] premise that Dr. Wolf is less than credible because of his reversals of opinion. His initial thought was that [Employee]

3

suffered a shoulder injury based upon her history and his last thought was that she suffered a shoulder injury based upon her history. His departure from these affirmative opinions occurred once when he replied to [Employer's] correspondence of October 5, 2015, which led him to the conclusion intended by the author and again when he reconsidered the correspondence that was kept in a separate portion of his file on March 25, 2016. These two departures from an affirmative opinion do not counteract his April 21, 2016 explanation of why he believes the injury is related, namely his consideration of [Employee's] current and past history juxtaposed against her current diagnoses.

The trial court went on to explain that "Dr. Wolf offers the more probable explanation of [Employee's] shoulder injury. Notably, he saw [Employee] on five occasions whereas Dr. Sickle merely reviewed records." According to the trial court, Dr. Wolf's opinion "comports with the factual chronology established in the evidence. [Employee] had pain in her shoulder for years but [Employee's primary care physician] never diagnosed the anatomic lesions at issue, did not restrict her from work, or refer her to an orthopedic specialist." Also, Employee "worked for five years at [Employer] with perfect attendance until sustaining an incident prompting orthopedic care concomitantly resulting for the first time in a recommendation for surgery and in disablement." Employer has appealed the trial court's award of benefits.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

4

**Analysis**

**A.**

Initially, we note that this case exemplifies a common problem, the submission of irrelevant medical records and the failure to comply with Tenn. Comp. R. & Regs. 0800-02-21-.16(6) (2015). Parties are charged with the responsibility of submitting evidence to the trial court in a specific manner, which is designed to make processing and deciding cases more efficient and expedient. Rule 0800-02-21-.16(6)(c), which addresses the submission of medical records in the trial court, mandates that a party submitting medical records in excess of ten pages "shall include a chronological table of contents." Moreover, "each of the records shall be identified by author and date and numbered as in the table of contents." *Id.*

The record in this case, which exceeds seven hundred pages, contains numerous medical records unrelated to any issue in the case. Among other irrelevant records introduced as evidence, these include:

- copies of insurance cards
- chest pain records from 1992
- skin/rash records from twenty-one years ago
- instructions on how to properly take a water pill
- sinus/throat infection records from sixteen years ago
- prescription refill orders that are at least seven years old
- CT scans of Employee's head seventeen years ago
- numerous pages of heart monitor readings
- mammogram studies
- blood test results showing cholesterol levels
- old chest x-ray results
- thumb injury records from twenty-four years ago
- hypertension records
- gallbladder records
- fertility procedure records
- illegible records
- tuberculosis screening questionnaire from 2009, and even
- records from when Employee delivered her children that document the procedures used and how healthy the babies were nearly thirty years ago

In addition to voluminous medical records that have nothing to do with Employee's injury, there are multiple duplicative records, and there is no table of contents as required by Rule 0800-02-21-.16(6)(c).

As a result of these deficiencies, appellate review in this case has been rendered "unnecessarily cumbersome and time-consuming." *James v. Landair Transport, Inc.*, No. 2015-02-0024, 2015 TN Wrk Comp. App. Bd. LEXIS 28, at *9 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015). Having to sift through hundreds of pages of medical records to glean what is pertinent to the issues to be decided is no small matter given that an expedited appeal must be decided within seven days of receiving the record on appeal. *See* Tenn. Code Ann. § 50-6-217(a)(2)(A) (2015). Rather than summarily vacating the trial court's decision and remanding this case for the purpose of creating a proper record, we will, on this occasion, address the merits of the appeal.

**B.**

Employer argues that the trial court's decision should be reversed because the court "ignored" evidence supportive of Employer's position, including "overwhelming evidence that the Employee is not credible." Taken as a whole, Employer disagrees with the trial court's determination of which medical opinion to accept and its weighing of the evidence in awarding benefits. Employee filed an untimely responsive brief, which we have declined to consider.[1]

Our analysis of this case is guided by several well-established principles. First, at an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence but, instead, must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). The Tennessee Workers' Compensation Law also provides that "there shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015).

In addition, it is well-established that a "trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v.*

---

[1] Employee's appellate brief, which was due on or before September 6, 2016, was filed September 13, 2016. No motion has been made to accept Employee's late-filed brief and no explanation has been provided for why it was submitted less than a week before an opinion had to be filed resolving this appeal.

*UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). When there are conflicting medical opinions, as in this case, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). When one of those experts is an authorized treating physician, that expert's opinion is afforded a presumption of correctness on the issue of causation. Tenn. Code Ann. § 50-6-102(14)(E) (2015).

Here, the trial court chose to accept the opinion of Dr. Wolf, the authorized treating physician. While Dr. Wolf did vacillate in his opinion regarding causation, he ultimately concluded that Employee's right shoulder complaints were causally related to her work with Employer. He did so after reviewing the records from Employee's primary care physician, meeting with Employee, and considering his prior opinions. He acknowledged having rendered conflicting opinions with respect to causation, for which he expressed regret, but he explained in some detail the rationale behind his final opinion given on April 21, 2016, which, as noted by the trial court, was the same opinion he expressed at the outset.

Employer argues that Dr. Sickle's opinion should be given more weight than Dr. Wolf's opinion because Dr. Wolf's opinion is unreliable due to his equivocation. The totality of Dr. Sickle's opinion consisted of a checked box in response to correspondence that, as the trial court observed, "begged a negative answer to its causation question." That opinion was rendered after performing a records review and without having examined Employee. The trial court determined the presumption of correctness afforded the authorized treating physician's opinion was not rebutted by Dr. Sickle's review of the records. The evidence does not preponderate otherwise.

Employer also argues that the trial court stepped outside its proper role by "implicitly [finding] that the information Dr. Wolf did not take into account (i.e. several doctor's visits that were not recognized in Dr. Wolf's timeline) was not significant." Employer reasons that, in accepting Dr. Wolf's opinion, the trial court must have considered the medical proof allegedly not considered by Dr. Wolf and found it irrelevant. We agree with Employer that judges, like lawyers, are poorly positioned to formulate expert medical opinions. *See Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015) ("Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record."). However, contrary to Employer's contentions, the trial court did not overstep its bounds in this case. Rather, the trial court considered the two expert opinions, acknowledged the information upon which each opinion was based, and selected the opinion it deemed more reliable, a task

7

judges must perform when confronted with conflicting medical proof. The trial court's determination of this issue was well within the bounds of the medical opinions contained in the record.

Finally, Employer asserts that Employee's testimony "demonstrated an utter lack of trustworthiness." Employer relies upon Employee's denials of prior shoulder problems and her failure to inform Dr. Wolf or Employer that she had a history of shoulder complaints.[2] From our perspective, however, the trial court reviewed the record, considered the information adduced by Employer on cross-examination, and accepted Employee's testimony as sufficient to entitle her to benefits at this interlocutory stage of the claim. The law is clear that "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). While there are inconsistencies between the medical records and Employee's testimony, the trial court, in a thorough order, considered the strengths and weaknesses of all the relevant evidence. Based upon our review of the record, we cannot conclude that the evidence preponderates against the trial court's decision.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed. The case is remanded for any further proceedings that may be necessary.

_____
Marshall L. Davidson, III
Presiding Judge
Workers' Compensation Appeals Board

---

[2] Employer also attempted to challenge Employee's credibility by questioning her regarding her having retained other counsel prior to retaining her current attorney and regarding her filing a petition for benefit determination, withdrawing it, and filing another. It is unclear what, if any, bearing either of these points has on Employee's credibility.



**FILED**

**September 19, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 7:51 A.M.**

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Sarah Love | ) | Docket No.  2015-07-0195 |
| | ) | |
| v. | ) | State File No.  55816-2015 |
| | ) | |
| Delta Faucet, Co., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 19th day of September, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| James Krenis | | | | | X | James.krenislaw@outlook.com<br>Leslie.krenislaw@outlook.com |
| Art Crews | | | | | X | Crewsa@waldrophall.com |
| Allen Phillips, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeaentte Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov